IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, EUGENE GEORGE, PAUL SONGER, CHARLES VELARDO, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, and BEN CAPP, JR., as Trustees of, and on behalf of, the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND,
620 F Street, N.W.
Washington, DC 20004
(202) 783-3788,

Plaintiffs,

v. ) Civil Action No.

HENRY MASONRY, INC.
1707 Fairview Farms Circle
Wentzville, MO 63385

Defendant.

**COMPLAINT**

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

**CAUSE OF ACTION**

**Jurisdiction and Venue**

1. This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund"), to enforce the terms of the Plan and Trust Agreements adopted by the IPF and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3),

1132(g)(2), 1145. Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF.

2. The IPF is administered in the District of Columbia. Venue for the claims asserted by the IPF is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

**Parties**

3. Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Ben Capp, Jr., are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). Plaintiffs bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4. Plaintiff, IHF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

5. Defendant, Henry Masonry, Inc. is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Missouri.

6. Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

**Violation Charged**

7. Henry Masonry, Inc. acting through its authorized agent or officer, executed a collective bargaining agreement with the Union. That collective bargaining agreement is annexed hereto as Exhibit A and is hereinafter referred to as the "Agreement".

8. Pursuant to the Agreement, Defendant agreed to make certain payments to the IPF on behalf of covered employees of Defendant.

9. Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

10. Upon information and belief, Defendants have failed to properly submit required reports and contributions for hours worked pursuant to the Agreement.

11. Plaintiffs seek to conduct an audit of Defendant's books and records in order to determine any amounts which may be owed for work covered by the Agreement.

12. Under the terms of the Plan and Trust Agreement adopted by the IPF Board of Trustees, the CCU Procedures and Supreme Court precedent, Plaintiffs are entitled to conduct an audit of the books and records of Defendant to determine whether contributions have been made in compliance with Defendant's obligations.

13. Under the terms of the Plan and Trust Agreement adopted by the IPF Board of Trustees, Plaintiffs are entitled to recover any delinquent contributions found due by the audit, as well as interest, calculated at 15 per cent per annum, and the greater of either liquidated damages, calculated at 20 percent, or an additional computation of interest, on the aforementioned delinquent contributions.

14. Despite several requests by the IPF, or a representative of the IPF, for access to Defendant's books and records so that the IPF auditor can determine whether contributions

have been made in compliance with Defendant's obligations, Defendant has failed to grant the IPF auditor such access to their books and records.

15. Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreement.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For an order directing Defendant Henry Masonry, Inc. to turn over to Plaintiffs' auditor its books and records for the time period January 2004 through the present including, but not limited to, payroll records and the general ledger(s). Plaintiffs will suffer irreparable injury in the absence of such injunctive relief and there is no adequate remedy at law.

Plaintiffs seek an order granting it:

a. Preliminary injunctive relief and

b. Permanent injunctive relief.

2. For any amounts determined owed the IPF by Defendant, which are not yet ascertainable until an audit is conducted.

a. for the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

3. In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

4. That Defendant be directed to comply with its obligations to correctly report and to contribute to the IPF all additional reports and contributions due and owing, and to pay the costs and disbursements of this action.

5. Such other relief as this Court deems appropriate, including judgment for any contributions and/or interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: February 13, 2007

By: ____________________

Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

Attorneys for Plaintiffs

RECEIVED AUG 1 0 2001 M00102

COLLECTIVE BARGAINING AGREEMENT WITH

BRICKLAYERS' LOCAL UNION No. 1 OF MISSOURI

OF THE I.U. OF B.A.C.

This Agreement is made and entered into as of the 31st day of May, 2001, by and between Mason Contractors Association of St. Louis (hereinafter referred to as the Association), for and on behalf of its members as set forth in Schedule A attached hereto and other contractors who are signatory hereto or who may become signatory hereto (hereinafter referred to as the Employer), and Bricklayers and Allied Craftworkers Local Union No. 1 of Missouri (hereinafter referred to as the Union).

ARTICLE I: Definitions

Section 1. Employer. The term "Employer" as used herein shall mean any person, partnership, joint venture, association, firm or corporation who employs journeymen and apprentice members of Bricklayers' Local Union No. 1 of Missouri of the I.U. of B.A.C., and persons working under the jurisdiction of said Union and who agrees to be bound by the terms and provisions thereof affecting the Employer by signing and subscribing to this Agreement. If the Employer is a corporation, the term "Employer" shall also include the spouses of the record holders of the stock. The term "Employer" and "Contractor" are used interchangeably herein.

Section 2. Union. The term "Union" shall mean the Bricklayers' Local Union No. 1 of Missouri of the I.U. of B.A.C.

Section 3. The term "Employee" as used herein shall mean and include all journeymen, apprentices, superintendents and foremen (1) who are members in good standing of the Union or (2) who are working under the jurisdiction of the Union and have tendered the periodic dues uniformly required of members of the Union as a condition of acquiring or retaining membership and (3) who are in the employ of an Employer who has entered into this Collective Bargaining Agreement.

Section 4. The term "aggregate compensation" shall mean a sum of money payable to the Employee as wages or a contribution and payment by the Employer to one or more of the employee benefit funds referred to in Articles V, VI, VII, and IX of this Agreement, or a combination of wages and contribution and payment to such employee benefit funds, for each hour worked by each employee.

ARTICLE II: Recognition and Jurisdiction

Section 1. The Employer hereby recognizes and acknowledges that the Union is the exclusive representative of all its Employees who are bricklayers, stonemasons, blocklayers, pointers, cleaners and caulkers and their apprentices and masonry superintendents and foremen employed by the Employer.

M00102

Section 2. The Employer hereby agrees that it will neither negotiate nor make any collective bargaining agreement with any of its Employees in the bargaining unit or in the crafts covered hereby unless such agreements are made with the duly authorized representatives of the Union.

Section 3. No later than eight (8) days following the effective date of this Agreement, all present Employees must, as a condition of continued employment, be or become members of the Union; all Employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. Failure of any Employee to comply with the provisions of this subsection shall, upon request of the Union, result in termination of such Employee, provided that the Union has given the Employee four (4) days notice that his obligation to make payment has not been met and that his delinquency renders him liable to termination under this section. The Employer shall not be obligated to dismiss an Employee for non-membership in the Union: (a) if he has reasonable grounds for believing that such membership was not available on the same terms and conditions generally applicable to other members; or (b) if he has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the Employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

Section 4. The territorial jurisdiction of the Union, for the purposes of this agreement, includes the City of St. Louis and the Counties of St. Louis, Jefferson, Warren, St. Charles, Lincoln, Franklin and Crawford in the State of Missouri and, for the purposes of refractory work and prevailing wage jobs only, the Counties of Clark, Lewis, Marion, Ralls and Pike in the State of Missouri.

Section 5. The Employer agrees that upon receipt from individual Employees of written authorization, it will deduct Union dues from wages of such Employees in such sum as determined by the Union membership from time to time.

The dues thus deducted shall be paid to the Financial Secretary of the Union or other agent designated by the Union for that purpose.

Section 6. The work of the Union is laying, setting, unloading, bedding, pointing, grouting, caulking, cutting, fitting, plumbing, aligning, leveling, anchoring, bolting, welding, installation of gasket and expansion joint materials in all brick, masonry, stone masonry, precast aggregate panels and all types of artificial or imitation masonry. Included by way of example but not by way of limitation are face brick, common brick, concrete brick, artificial or imitation brick of all types, regardless of whether layed, with mortar or without mortar, cut stone, rubble stone, granite, marble, slate, artificial or imitation stone of all types, regardless of whether layed, with mortar or without mortar, artificial or imitation masonry of all types, such as prefabricated slabs, precast aggregate panels, precast sills, coping lintels, beams, stair treads, stair risers, fireplaces, etc., terra cotta, solar screen, glass blocks, glass masonry units of all types; concrete cinder, haydite, slag, artificial or imitation blocks of all types; clay tile, gyp tile, structural glazed or glazed tile of all types, masonry paving and rip rapping of all types, with or without mortar; all reinforcing

MD0102

of masonry, including placing, tying and setting of rods; all grouting; all plastic, castables and refractory material; and insulating material applied in conjunction with refractory material, cutting, patching, pointing of joints, beams and joist pockets and openings in masonry walls; all caulking of abutting masonry openings in masonry walls, expansion joints and false joints in all types of masonry; waterproofing of all types of masonry; insulation in masonry walls or applied to masonry walls such as cork blocks, mineral wool bats, zonolite and styrofoam; flashing undercopings, sills, over windows and at spandrel beams, expansion joint material, block mesh, wall ties; all mortar materials, and parging; cleaning, tuckpointing, sand blasting, steam cleaning and gunite work on all types of masonry, guniting of all refractory materials.

Section 7. Subcontracting. (a) The Employer agrees not to sublet, assign or transfer any work covered by this Agreement as set forth in Section 6 of this Article which is to be performed at the site of a construction project within the City of St. Louis and the Counties of St. Louis, Jefferson, Warren, St. Charles, Lincoln, Franklin, Crawford, Clark, Lewis, Marion, Ralls and Pike Counties in the State of Missouri to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all the terms and conditions of this Agreement, provided however, that if the Employer exercises sufficient control over the purported subcontractor for the purported subcontractor to be classified as an Employee under the twenty factors used in the Internal Revenue Code Regulations, the Employer shall make all the employer contributions required under this Collective Bargaining Agreement for the work performed at said job site by the purported subcontractor. (b) All charges of violation of this Article shall be considered as a dispute and shall be processed as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of disputes.

**ARTICLE III: Grievance Procedure**

Section 1. All disputes between the Employer and the Employee shall first be taken up with the steward on the job, who shall immediately notify the Union office of the existence of the disputes.

Section 2. If no satisfactory solution is reached, the matter shall be referred to the Joint Arbitration Board at its next regular meeting or a special meeting to be called by either the chairman or secretary of the Joint Arbitration Board, if the Employer is a member of the Mason Contractors Association of St. Louis. If the Employer is a non-member of the Mason Contractors Association of St. Louis, the matter shall be referred to the next regular meeting of the Executive Committee of the Bricklayers' Local Union No. 1 of Missouri or a special meeting called in compliance with the Union's By-Laws and Constitution.

Section 3. The Joint Arbitration Board shall consist of twelve (12) members, six (6) of whom shall be selected by the Union and six (6) of whom shall be Employers selected by Mason Contractors Association of St. Louis. The Board shall make rules for the conduct of its meetings.

MD0102

RECEIVED AUG 1 0 2001

## ARTICLE IV: Wages

Section 1. The Wages from June 6, 2001 through June 4, 2002 shall be as follows:

Minimum Journeyman's rate.............................. $24.35
Minimum Foreman's rate................................ $26.35
Minimum Superintendent's rate.......................... $26.85
(If more than one Foreman is on a job, one will be designated Superintendent at $0.50 above Foreman's wage).

Wage rate on sewer work manholes over six feet
in depth.......................................... $24.60
open cut work..................................... $24.60
tunnel work....................................... $24.85
under pressure.................................... $25.35

FREE STANDING STACK WORK:
First 50 feet in height................................ $24.60
From 50 to 75 feet in height........................... $24.85
From 75 to 100 feet in height.......................... $25.10
From 100 feet and over in height....................... $25.60

Premium pay for Refractory, hot work to be paid at time and one-half for regular working hours, double-time after eight hours, and double time for Saturday, Sunday and Holidays.

Section 2. The aggregate compensation shall be increased by each of the following sums for the period set forth hereafter beside such period, above that aggregate compensation in effect immediately prior to such effective dates:

$1.35 per hour for the period June 6, 2001 through October 30, 2001
$0.30 per hour for the period October 31, 2001 through June 4, 2002
$1.60 per hour for the period June 5, 2002 through June 3, 2003
$1.60 per hour for the period June 4, 2003 through June 1, 2004
$1.50 per hour for the period June 2, 2004 through May 31, 2005
$1.50 per hour for the period June 1, 2005 through May 31, 2006

Foreman's pay increases as follows:
$2.50 per hour for the period June 5, 2002 through June 3, 2003.
June 4, 2003 Foreman's wage (including vacation pay) to increase and stay at 10% over Journeyman scale.

Said increases in aggregate compensation shall be paid by the Employer either as wages or as contribution to one or more of the employee benefit funds provided for in Articles V, VI, VII, and IX of this Agreement, or in any combination of wages and contributions (and when they are to be paid to an employee benefit fund, they shall be in addition to the amount specified in Articles V, VI, VII, and IX hereof), as may be determined and designated by the Union; not less than sixty (60) days before the effective date of any such increase of aggregate compensation scheduled herein, the Union shall notify in writing the Mason Contractors Association of St. Louis and each Employer who is signatory to this Agreement who is not a member of the Mason Contractors Association of St. Louis, of its determination and designation as to what portion of such increase shall be payable in wages or in contributions to one or more of said employee benefit funds.

MD0102

ARTICLE V: Welfare Plan

Section 1. The Employer accepts and agrees to be bound by the trust agreement of Bricklayers Local Union No. 1 of Missouri Welfare Fund, as it now exists and as it is hereafter amended. Said trust agreement is incorporated herein by reference and made a part hereof as if fully set out herein.

Section 2. The Employer agrees that he will contribute and pay into Bricklayers Local Union No. 1 of Missouri Welfare Fund $2.62 per hour for each hour of the first 40 hours worked by each Employee in each work week, and one and one-half said amount, $3.93 per hour for each hour of overtime worked by each Employee in each work week. Said sum shall be used to provide health and welfare benefits in accordance with the Bricklayers' Local No. 1 of Missouri Welfare Trust and Plan.

ARTICLE VI: Pensions

Section 1. The Employer accepts and agrees to be bound by the "Restatement of Bricklayers Local No. 1 of Missouri Pension Trust," the Bricklayers Local Union No. 1 of Missouri Pension Plan, the "Restated Agreement and Declaration of Trust of the Bricklayers and Trowel Trades International Pension Plan" as such documents now exist or as they may hereafter be amended.

Section 2. Bricklayers Local No. 1 of Missouri Pension Trust. The Employer agrees that he will contribute to Bricklayers Local No. 1 of Missouri Pension Trust the sum of $1.75 per hour for each hour of straight time and the sum of $2.63 for each hour of overtime, for which an Employee, except any apprentice during his or her first year of apprenticeship, receives pay. Said contribution shall be used for the purpose of providing pension benefits in accordance with the Bricklayers' Local No. 1 of Missouri Pension Trust and Plan.

Section 3. Bricklayers Union Local No. 1 of Missouri Supplemental Pension Plan. The Employer agrees that he will contribute to Bricklayers Union Local No. 1 of Missouri Supplemental Pension Trust the sum of $2.75 per hour for each hour of straight time and the sum of $4.13 for each hour of overtime for which an Employee receives pay. Said contribution shall be used for the purpose of providing supplemental pension benefits in accordance with the Bricklayers Union Local No. 1 of Missouri Supplemental Pension Plan.

Section 4. Bricklayers and Trowel Trades International Pension Fund. In addition to the contributions and payments agreed upon in Section 2 of this Article:

(1). (a) The Employer agrees to make payments to the Bricklayers and Trowel Trades International Pension Fund for each Employee covered by this agreement, as follows:

(b) For each hour or portion thereof, for which an Employee receives straight time pay, the Employer shall make a contribution of 50 cents to the above-named Pension Fund. For each hour or portion thereof, for which an Employee receives overtime pay, the Employer shall make a contribution of 75 cents to the above-named Pension Fund.

MO0102

(c) For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the Employee in accordance with this Agreement shall be counted as hours for which contributions are payable.

(d) Contributions shall be paid on behalf of any Employee starting with the Employee's first day of employment, including apprentices, helpers, trainees and probationary employees.

(e) The payment of the Pension Fund required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, dated July 1, 1972. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he has actually signed the same.

(2). The Employer hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employers Trustees, to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust.

(3). All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension Fund.

(4). If an Employer fails to make contributions to the Pension Fund within twenty days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, the Employer shall be liable for all costs for collection of payments due together with attorney's fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

(5). The Pension Plan adopted by the Trustees of said Pension Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

**ARTICLE VII: Vacation**

Section 1. Employer accepts and agrees to be bound by the Trust Agreement of Bricklayers' Union Local No. 1 of Missouri Vacation Trust, as it now exists and as hereafter amended. Said Agreement is incorporated herein by reference and made a part hereof as if fully set out herein.

Section 2. The aforesaid Vacation Trust is established for the purpose of providing vacations for Employees.

Section 3. The Employer agrees to pay on behalf of each Employee, to Bricklayers' Local Union No. 1 of Missouri Vacation Trust, the sum of $2.00

per hour for each of the first 40 hours worked by such Employee in each work week and one and one-half times that amount of overtime, to-wit: $3.00 per hour.

Section 4. The trustee shall determine the method by which the funds shall be collected, whether the plan be funded by means of stamp purchases or otherwise, such as deposits with a financial institution.

The Employer agrees to pay a service charge to cover the costs of operation of the vacation plan when needed as determined from time to time by the trustees.

Section 5. The Employees shall claim the funds deposited for their benefit within the time specified in the Vacation Trust Agreement or by the rules and regulations of the Board of Trustees of the Vacation Trust.

Section 6. Employees must advise the Employers of the date they wish to take their vacation. Vacation periods must be arranged and approved by the Employer so that his work program will not be disrupted. No more than ten percent (10%) of any contractor's Employees shall be permitted to take their vacation the same period.

Section 7. Employees shall take their earned vacation period on consecutive days. The length of vacation period is to be determined by the stamps redeemed. Stamps equal to one day's pay shall represent one day of vacation. Employee shall not be permitted to accept pay in lieu of vacation unless agreed by the Union.

**ARTICLE VIII: Industry Promotion Funds**

Section 1. For the purposes of promoting the use of masonry products within the jurisdiction area of the Union, the Employer accepts and agrees to pay to the Masonry Institute of St. Louis the sum of 20 cents per hour for each of the first 40 hours worked by each Employee in each work week through May 31, 2006 except that no payment shall be required to be made for any hours worked by an Employee who is an apprentice.

The Masonry Institute of St. Louis Trust is incorporated herein by reference and made a part of this contract as if fully set out.

Section 2. Of said sum of 20 cents per hour, the Employer agrees to pay the sum of 2 cents per hour of regular time worked by each bricklayer, other than an apprentice, into the International Masonry Marketing and Program Board.

Section 3. Of said sum of 20 cents per hour, the Employer further agrees to pay the sum of 1 cent per hour of regular time worked by each bricklayer, other than an apprentice, into the International Masonry Institute/Research and Development Board.

Section 4. The parties agree that negotiations will continue between both Union and Association Arbitration Boards on the acceptance and funding of IMI. Any changes agreed to by the Association and the Union shall automatically be incorporated into this agreement.

RECEIVED AUG 1 0 2001 MO0102

**ARTICLE IX: Apprentice Program**

Section 1. The parties hereto recognize the necessity of an apprenticeship program in order to have a sufficient number of qualified mechanics.

Section 2. In order to administer and finance the apprentice plan the Employer accepts and agrees to the Bricklayers' Local Union No. 1 of Missouri Apprenticeship Trust and Training Plan and said Trust and Plan are incorporated herein by reference as if fully set out.

Section 3. To defray the costs of administering the apprentice program, the Employer agrees to contribute and pay into the Bricklayers' Local Union No. 1 of Missouri Apprenticeship and Training Trust the sum of 15 cents per hour for each of the first 40 hours worked by each Employee in each work week through June 4, 2002, except that no payment shall be required for any hours worked by an Employee who is an apprentice. Effective June 5, 2002, the contribution rate shall be 20 cents per hour. Effective June 4, 2003, the contribution rate shall be 25 cents per hour.

Section 4. In order to assist in defraying the costs of administering the apprentice program at the International level, the Employer agrees to contribute and pay into the International Masonry Apprentice Trust, the sum of 2 cents per hour for each of the first 40 hours worked by each Employee in each work week through May 31, 2006, except that no payment shall be required for any hours worked by an Employee who is an apprentice.

Section 5. The Minimum Wages for Apprentices shall be as follows:

1st 6 months - 50% of the hourly minimum rate for journeymen
2nd 6 months - 60% of the hourly minimum rate for journeymen
3rd 6 months - 70% of the hourly minimum rate for journeymen
4th 6 months - 80% of the hourly minimum rate for journeymen
5th 6 months - 85% of the hourly minimum rate for journeymen
6th 6 months - 90% of the hourly minimum rate for journeymen
7th 6 months - 95% of the hourly minimum rate for journeymen

Section 6. No person shall become an apprentice who is not a resident of the Union's jurisdictional territory as set forth in Article II, Section 4 of this Agreement at the time such person makes application to be admitted to the apprenticeship program.

Section 7. a) Change school attendance to one (1) eight-hour day, every other week. b) Completion of an established, certified skill level before an apprentice can move to next pay level.

**ARTICLE X**

Each Employer who is a signatory to this Agreement shall pay to the Mason Contractors Association a sum of one (1%) percent of minimum journeyman's rate, per hour for each Employee of the Employer within the bargaining unit, except apprentices. Such amount shall be paid as part of the stamp now in use for and payable to Commerce Bank of St. Louis, as agent. Said amount so paid shall be transmitted to the Mason Contractors Association, no later than the 15th day of month following the calendar month in which the work was performed. Delinquent contributors shall be subject to such penalties as the Mason Contractors Association may prescribe from time to time.

M00102

In no event shall the foregoing provision be subject to or suitable for grievance and arbitration under this Agreement.

The Mason Contractors Association shall comply with all present and future Federal laws governing the same.

The Union shall have no participation or control of any kind or degree whatever nor shall the Union be connected in any way with the Mason Contractors Association.

The Mason Contractors Association as part of this Agreement agrees to defend, indemnify and hold harmless the Union from any and all claim made against it arising out of the establishing and existence of the Fund.

**ARTICLE XI: Hours of Work, Payment of Wages and Contributions**

Section 1. For the purpose of this Agreement and except as is otherwise provided herein, the work week shall be determined to begin at 8:00 a.m. Wednesday and end at 4:30 p.m. on the following Tuesday. Except as herein provided, working hours are from 8:00 a.m. to 11:55 a.m. and 12:30 p.m. to 4:25 p.m. and no more than the regular hours shall be worked during the forenoon or afternoon at the regular rate.

From May 31, 2001 through May 31, 2006, flexible starting time may be had based upon the decision of a majority of Employees on each job site, and in the case of days of inclement weather starting time and quitting time may be adjusted so long as the hours worked on such days do not exceed eight and do not extend beyond 4:30 p.m.; however, the Employee, at his option, shall not be required to work beyond the flex quitting time that had been set for his job site.

Further, in circumstances where the Employee or Employees have regularly been working overtime on a particular job site and/or have been scheduled to work overtime on a particular day or days, no adjustment in the starting time shall operate to deprive Employees of overtime pay which they would have otherwise received but for the change in the starting time. The parties understand that the application of the provisions of the preceding sentence will result in Employees receiving overtime pay even where they have not worked more than eight hours on a particular day.

Regardless of the starting time, the forenoon working hours shall end at 11:55 a.m. and the afternoon working hours shall begin at 12:30 p.m. and end 8 hours and 25 minutes after the starting time fixed by the Employer for forenoon hours.

None of the above provisions for a starting time earlier than 8:00 a.m. shall apply to refractory work and acid brick work.

Work performed by an Employee on a non-holiday Saturday, except as hereinafter provided, or at night or before or after regular working hours on a non-holiday weekday, shall be considered overtime work, for which Employees working during such time shall be paid at the rate of one and one-half times their regular hourly wage rate for each hour or fraction thereof, worked during such time.

Work performed on a Sunday or on the following holidays: New Years Day, Memorial Day, Independence Day, Labor Day, Veterans Day, Thanksgiving Day and Christmas Day, shall also be considered overtime work for which the Employee shall be paid twice the amount of his or her regular hourly wage rate for each hour or fraction thereof worked on any such day.

Where shift work is required, no less than three shifts shall be worked. Each shift shall work 7-1/2 hours and be paid for 8 hours at the regular rate of pay.

Wages for the preceding work week shall be paid at the site of employment on Friday following the close of such work week before quitting time, providing the Employer has scheduled his Employees for the following work day authorized by the Union, and if inclement weather does not permit work on such Friday or if the Employer does not have work for the Employees for any reason, then payment shall be before noon on the Friday following the close of such work week.

When a legal holiday falls on a Friday, Employees shall be paid before quitting time on Thursday, except that if inclement weather does not permit work on such Thursday preceding the Friday legal holidays, then payment shall be made before noon on such Thursday.

In the event the Employer does not schedule his men for work on the following work day authorized by the Union, or in the event the journeymen or apprentice members shall be laid off for any cause and for any length of time, the Employer shall pay the Employees up to and including all time worked on the last day of scheduled work before quitting time.

Section 2. Employer agrees that he will furnish the Union either with a bond, in which the Employer is principal and a qualified surety company is the Surety, or a Letter of Credit from a bank guaranteeing the payment of all wages and checked off dues of the Employees of the Employer and all payments to the funds, trust or association required of the Employer by the provisions of Articles V, VI, VII, VIII, IX and X of this Agreement, which accrue during the period of such bond or Letter of Credit, to the extent of the amount of such bond or Letter of Credit. The amount of such bond or Letter of Credit shall be determined in advance by the Union commensurate with the amount of the Employer's anticipated payroll for Employees, but in no case shall the amount of the bond or letter of credit be for less than $3,500.00.

The bond shall provide in same that no cancellation of the bond by the Surety shall become effective earlier than thirty (30) days from the date of receipt by the Union of written notice of cancellation. The Letter of Credit shall be irrevocable for a period of one (1) year from the date of its issuance, but may contain a provision that it may be cancelled prior to the expiration of said period only with the consent of the beneficiary Union, the customer and the issuer, and the Letter of Credit shall contain the same, or substantially similar, provisions as are set forth in Exhibit I, attached to this Collective Bargaining Agreement.

Section 3. Employees will not be permitted to work for any Employer who is delinquent in the payment of wages or in the payment of any contributions required to be made by the Employer under Articles V, VI, VII, VIII and IX of this Agreement.

MD0102

Section 4. Contributions to the trusts provided for in Articles V, VI, VII, VIII, IX and X of this Agreement and remittance of check off dues for the Union and the International Union of Bricklayers and Allied Craftworkers shall be made by the Employer in the following manner: The Employer, in advance of the date such contributions and check off dues remittance become due as hereinafter stated, shall purchase from Commerce Bank of St. Louis, as agent, or such other agent as may be designated by the Joint Arbitration Board, stamps, the cost each of which shall be equal to the hourly sum of the check off dues and hourly contributions required under the provisions of Articles V, VI, VII, VIII, IX and X of this Agreement, for each hour worked by the Employee. At the time provided for payment of wages in Article XI hereof, the Employer shall deliver to each Employee, such a stamp for each hour worked by the Employee during the pay period for which wages of the Employee were earned, and any payment or contribution dues and not paid shall thereafter be delinquent.

The Employer shall deduct from the wages of each Employee who has signed a check-off authorization conforming to federal law, and transmit monthly to the Union (or to any agencies designated by said Union for the collection of such money), the sum for each hour paid which the Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of each Employee's Union dues to said Union, and to its International Union.

On or before the 10th day of the month, each Employer shall make a full and complete report of all contributions due the said trusts, all union check-off dues due the Union and the International Union of Bricklayers and Allied Craftworkers, and all payments due the Mason Contractors Association for the preceding calendar month. Any Employer who fails to make such a full and complete report on said date shall be considered delinquent.

Section 5. The Employer further agrees to make his books and records available for inspection as provided in the trust agreements referred to in Articles V, VI, VII, VIII and IX of this Agreement and further agrees that if reports required are not made or if the reports are inaccurately made the Employer will be liable for the reasonable expenses actually incurred to audit the records of the Employer.

Section 6. For the purpose of defraying the additional expense of handling the collection of delinquent accounts and to reimburse the fund or funds for being deprived of the use of all sums, any Employer who is delinquent in the reporting or in the payment of contributions to the trusts as provided in Articles V, VI, VII, VIII and IX, for a period for thirty (30) days shall be assessed an additional sum of ten percent (10%) of the amount of the delinquency or the additional sum of Ten Dollars ($10.00) whichever is greater. Delinquent Employers for the second month of any delinquency shall be assessed an additional sum equal to two percent (2%) and the further assessment of two percent (2%) per month shall be made for any additional months that the Employer remains delinquent on any payment. The maximum amount which may be due and owing as service charge shall not exceed One Hundred percent (100%) of the amount due for any one pay period for which the Employer is delinquent. Service charge is defined as "liquidated damages." In the event that it is necessary to engage the services of an attorney for the purpose of collecting delinquencies, the Employer shall be liable for reasonable attorney fees, expenses and court costs made necessary by reason of said delinquency. If reports of Employers are not made or are

MOD102

inaccurately made, the Employer shall be liable for the reasonable expense of the auditor who shall audit the payroll records.

Section 7. Notwithstanding any other provision of the Agreement between the Employer and the Union, the Employer agrees that the Union shall have the right to terminate this Agreement temporarily and to strike and picket the Employer in the event that the Employer shall become delinquent in his payment under Articles V, VI, VII, VIII and IX or of wages, as agreed, and who shall refuse or neglect to pay all delinquencies in full within five (5) days after notice of such delinquency by the Union; such notice is to be sent by Certified Mail Return Receipt Requested, and is to be addressed to the Employer at the last address on the file with the Union. When the Employer shall have paid all delinquencies, this Agreement shall be reinstated and shall be in full force and effect according to the terms thereof.

Section 8. Any Employer who is a member of Bricklayers' Local Union No. 1 of Missouri of the I.U. of B.A.C. shall not return to the craft as a journeyman employee unless he shall have furnished proof to the Union that all obligations under this Agreement for wages, vacations, welfare and pension benefits shall have been satisfied in full, or unless he shall show to the satisfaction of the Union that arrangements for such payment shall have been made.

Section 9. It is agreed that the trusts or plans referred to in Articles V, VI, VII, VIII, IX and X of this Agreement or the trustees thereof, as the applicable law may provide, may sue the Employer as defined in this Agreement and any other person signatory to this Agreement as guarantors, for any delinquencies and penalties as provided in this Agreement or in the Trust agreements herein referred to.

## ARTICLE XII: Miscellaneous

Section 1. The Employer reserves the right to discharge any workman at any time with the exception of the steward and any apprentice. The workmen so discharged shall be paid immediately upon the job.

Section 2. No work shall be done Saturday, Sunday, New Year's Day, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, Christmas Day or before starting time or after quitting time without getting permission from the Secretary of the Union.

Whenever the recognized legal holidays fall on Sunday, they shall be observed on the following day.

Section 3. Employees shall be released from work at 4:00 p.m. with pay for the remainder of the day for the purpose of voting at all elections and primary elections for candidates for office of the State of Missouri, the City of St. Louis, Missouri and the United States.

Section 4. When paid parking is required on a particular job site, each Employee working on that job site will receive $5.00 or his actual cost of parking, whichever is greater. Any amount over $5.00 per day will require a receipt.

M00102

When an Employee is working in refractory construction at a site located in the Missouri Counties of Clark, Lewis, Marion, Ralls or Pike, the Employer shall pay the Employee, in addition to wages, a travel allowance of Thirty Dollars ($30.00) per day for each day or fraction thereof worked unless the Employer is paying the Employee a maintenance allowance in excess of Thirty Dollars ($30.00) per day.

Section 5. Insurance. All Employers of members of Bricklayers' Local Union No. 1 of Missouri of the I.U. of B.A.C., irrespective of the number of Employees, shall carry Missouri Unemployment Compensation Insurance, Missouri Workers' Compensation and Employers Liability Insurance and shall file a copy of each of the certificates of insurance issued with the Secretary of the Union.

Section 6. Employer hereby agrees to abide by and be governed by the Working Code of the Union approved May 1, 1987, and any amendments thereto. Contractor hereby acknowledges receipt of a copy of the Working Code.

In the construction of residential single family dwellings and residential multi-family, one-story up to four units only, speed leads, corner posts, or dead man leads may be used. These speed leads, corner posts, or dead man leads, or whatever method is used, shall only be erected by the bricklayer working on the job during the normal eight (8) hour working period. Speed leads, corner posts, or dead man leads are to be furnished by the Employer.

As a consideration of the foregoing provision, any Employer whose major portion (90%) of brickwork is on residential single family dwellings, agrees to make every opportunity available to Apprentice Employees for instruction in the use of the level. The Trustees of the Bricklayers Local No. 1 Apprentice Fund shall have authority to move an Apprentice Employee to another Employer, provided the other Employer is willing and in agreement to accept the Apprentice Employee, to insure training of the Apprentice Employee in corner erection and use of the level.

Section 7. Subject to the policies regarding traveling members established from time to time by the International Union of Bricklayers and Allied Craftworkers, the Employer, when engaged in any construction within the geographic area covered by this Agreement, shall in hiring Employees covered by this Agreement, give preference to persons residing or normally employed in the geographic area covered by this Agreement.

Section 8. It shall not be a violation of this agreement for Employees covered by this Agreement to refuse to cross or to work behind a picket line, recognized by this Union, which has been authorized and established by other Union or Labor Organizations, and the Employer hereby agrees that it will not penalize, discipline or otherwise discriminate against any Employee covered by this Agreement electing to exercise such prerogative.

Section 9. Employers with Union Cards shall be able to work with tools of the trade on all jobs, with one exception, that they must not be foreman on jobs where they lay brick.

Section 10. This Agreement shall be binding upon the officers, directors and shareholders of each corporate Employer so that they shall be

M00102

individually liable, jointly and severally, for the payment of wages, check-off dues and contributions required under Articles V, VI, VII, VIII, IX and X and for the delinquency charges provided in Article XI, Section 6. Notwithstanding the resignation or withdrawal of any member, stockholders, officers or director of the Employer, the member, stockholders, directors or officer so resigning or withdrawing shall continue to be bound by the terms, conditions and provisions of this Agreement, and shall not be relieved of any liability thereunder.

This Agreement shall be binding upon the Employer and upon all its subsidiaries and associated enterprises.

Section 11. The terms and conditions of this Agreement shall unless otherwise provided, herein commence on the 31st of May 2001 and continue in effect from and after the date of effectiveness to and including May 31, 2006 and thereafter from year to year provided neither party gives notice to the other of its desire to negotiate a new Agreement. Said notice shall be given at least sixty (60) days prior to the expiration of this Agreement.

Section 12. The terms of this contract shall be in full force and effect as to all Employees working under the jurisdiction of this Union who are sent outside of the jurisdiction by an Employer after they are hired.

Section 13. In the event that a conflict should arise between the terms of this Collective Bargaining Agreement and any collective bargaining agreement negotiated between the Mason Contractors Association of St. Louis and any other labor organization, this Collective Bargaining Agreement shall prevail.

Section 14. The parties agree that the "Working Code of the Bricklayers, Tuckpointers and Stone Masons of the International Union of Bricklayers and Allied Craftworkers, Local No. 1 of St. Louis, Missouri, AFL-CIO, as amended May 1987" and as may hereafter be amended is adopted by the parties and is incorporated herein in entirety as part of this Collective Bargaining Agreement.

Section 15. The parties agree that the topic of research, development, and exploration of methods, practices, and procedures related to and directed toward the enhancement of productivity and work opportunities for the Employers and Employees of the masonry industry who are covered by this Collective Bargaining Agreement shall be part of the permanent agenda of the Joint Arbitration Board as referred to in Article III, Section 3, of said Collective Bargaining Agreement.

Section 16. Neither the Union nor the Employer shall discriminate in the referring or hiring of Employees because of age, race, color, religion, sex or national origin, or status as a Vietnam-era veteran, nor against qualified disabled veterans or qualified individuals with handicaps or disabilities.

Section 17. The Employer and the Union hereby adopt the St. Louis Construction Industry Alcohol and Substance Abuse Policy Statement (of June 1992), a copy of which is attached hereto and made a part of this Agreement.

The Employer shall furnish each of its Employees covered by this Collective Bargaining Agreement with a copy of said policy statement and the

MO0102

RECEIVED AUG 1 0 2001

Union shall promulgate a copy of it among its members.

The Association and the Union agree to establish a four-person committee consisting of two persons appointed by the Association and two persons appointed by the Union for the purpose of negotiating a new Alcohol and Substance Abuse Policy to replace the St. Louis Construction Industry Alcohol and Substance Abuse Statement (of June 1992). The Association and the Union agree that any policy agreed to by the aforesaid four-person committee shall automatically become part of and incorporated in this Collective Bargaining Agreement. The Association and the Union agree to make best efforts to finalize a new Alcohol and Substance Abuse Policy within one year following the effective date of this Collective Bargaining Agreement. The Association and the Union recognize that a new Alcohol and Substance Abuse Policy will likely require funding and such funding shall be a subject addressed by the four-person committee. Unless and until a new policy is agreed to, the St. Louis Construction Industry Alcohol and Substance Abuse Statement shall remain in effect.

Section 18. It is the intent of the parties hereto to abide by all applicable Federal and State statutes and rules and regulations made pursuant thereto. If any provision of this Agreement is held invalid by any court or governmental agency having jurisdiction, or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, then such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this Agreement shall remain in force and effect.

In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement, incorporating the substance of such provision to the extent allowable under the law, to be in effect during the period of invalidity or restraint.

IN WITNESS WHEREOF, the parties have hereunto set their hands this sixth day of August, 2001.

MASON CONTRACTORS ASSOCIATION
OF ST. LOUIS

By: Douglas A. Michael

President MCA
Title

BRICKLAYERS' LOCAL UNION NO. 1 OF
MISSOURI OF THE I.U. OF B.A.C.

By: [signature]

Business Manager
Title

Henry Masonry/Kevin

Abuse Policy will likely require funding and such funding shall be a subject addressed by the four-person committee. Unless and until a new policy is agreed to, the St. Louis Construction Industry Alcohol and Substance Abuse Statement shall remain in effect.

Section 18. It is the intent of the parties hereto to abide by all applicable Federal and State statutes and rules and regulations made pursuant thereto. If any provision of this Agreement is held invalid by any court or governmental agency having jurisdiction, or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, then such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this Agreement shall remain in force and effect.

In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement, incorporating the substance of such provision to the extent allowable under the law, to be in effect during the period of invalidity or restraint.

IN WITNESS WHEREOF, the parties have hereunto set their hands this 26 day of NOV, 2001.

Henry Masonry
EMPLOYER

Address: 1707 Fairview Farms Circle By: [signature]

Wentzville MO 63385 Pres
Title

Phone: 636-332-4846

NOTE TO EMPLOYER:
CHECK YOUR STATUS HERE
( ) corporation
( ) partnership
( ) sole proprietorship
( ) joint venture

( ) other: ______
(specify)

BRICKLAYERS' LOCAL UNION NO. 1 OF MISSOURI OF THE I.U. OF B.A.C.

By: Steven Bailey

Bus Rep.
Title

Association Signature Page Only



A100102

JS-44
(Rev.1/05 DC)

CIVIL COVER SHEET

07-340 CKK

**I (a) PLAINTIFFS**

JOHN FLYNN, et al.

11001

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

HENRY MASONRY, INC.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ira R. Mitzner (202) 420-2200
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

CASE NUMBER 1:07CV00340
JUDGE: Colleen Kollar-Kotelly
DECK TYPE: Labor/ERISA (non-employme
DATE STAMP: 02/13/2007

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- ⦿ 3 Federal Question (U.S. Government Not a Party)
- O 2 U.S. Government Defendant
- O 4 Diversity (Indicate Citizenship of Parties in item III)

**III CI... FOR P...**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**O A. *Antitrust***

- ☐ 410 Antitrust

**O B. *Personal Injury/ Malpractice***

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**O C. *Administrative Agency Review***

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**O D. *Temporary Restraining Order/Preliminary Injunction***

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**O E. *General Civil (Other)*** OR **O F. *Pro Se General Civil***

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(1)

| O G. *Habeas Corpus/ 2255* | O H. *Employment Discrimination* | O I. *FOIA/PRIVACY ACT* | O J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ⦿ K. *Labor/ERISA (non-employment)* | O L. *Other Civil Rights (non-employment)* | O M. *Contract* | O N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding O 2 Removed from State Court O 3 Remanded from Appellate Court O 4 Reinstated or Reopened O 5 Transferred from another district (specify) O 6 Multi district Litigation O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

ERISA - Complaint filed for recovery of delinquent contributions - 29 U.S.C. Sections 1002, 1132, 1145

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** Check YES only if demanded in complaint **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

**DATE** 2-13-07 **SIGNATURE OF ATTORNEY OF RECORD** [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

